## Fain, et al. v. Heathman, et al.

(Decided May 30, 1913.)

### Appeal from Fayette Circuit Court.

1. **Vendor and Purchaser—Lien as Security for Purchase Price—Assignment of.**—Where a vendor of real estate holds liens as security for the purchase price, upon two parcels of real estate —the lot sold by him and another his vendee had sold a third person, the lien retained upon which for unpaid purchase money, had been assigned to him—he had the right in one and the same action, to enforce both liens, and it was not error for the court in rendering judgment to direct that the lot sold by the vendor be first subjected to the payment of his debt.

2. **Married Women—Personal Judgment Against—When May Be Rendered—Rights of Married Women.**—A personal judgment may properly be rendered against a married woman whether sued jointly with her husband or singly, if the obligation be one upon which she is individually liable otherwise than as a surety. Since the adoption of section 2128, Kentucky Statutes, a married woman has every right to acquire, hold and dispose of property, real or personal, and to contract, sue and be sued, possessed by the husband, "except that she may not make any executory contract to sell, or convey, or mortgage her real estate, unless her husband join in such contract;" nor can she become a surety.

R. S. CRAWFORD for appellants.

W. C. G. HOBBS, JOS. S. BOTTS and FALCONER & FALCONER for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

December 18, 1895, the appellants, Talitha C. Fain, and Thomas A. Fain, her husband, sold to the appellees, Talitha Heathman and Joseph Heathman, her husband, two lots in the city of Lexington, the contract being evidenced by the following writing:

"This contract made this 18th day of December, 1895, between Talitha C. Fain, and Thomas A. Fain, her husband, of Lexington, Kentucky, parties of the first part and Talitha Heathman, wife of Joseph Heathman, of Lexington, Kentucky, party of the second part, witnesseth:

"That the said party of the first part hereby agrees to sell and convey to the said party of the second part, for the consideration hereinafter named, those two certain tracts or parcels of land, described and bounded as

follows, both of said tracts being situated in Fayette County, Kentucky:

"First, the south 20 feet of lot 18 in block 1 of Forest Hill, as shown an pages 38 and 39 of Plat Book No. 1 in the office of the clerk of Fayette County Court, fronting 20 feet on the west side of Georgetown street and extending back 125 feet to lot 19 on said block and bounded on the south by lot 17 in the same block, and on the north by 30 feet of lot 10t18, heretofore conveyed to Maggie J. Warren, and by her conveyed to said parties of the first part hereto; the property above described being the same property conveyed to the first parties hereto by deed from the Forest Hill Land Company, dated October 4, 1892, which is to be recorded in the Fayette County Clerk's office.

"Second, that certain tract of land described as follows: The north 30 feet of lot 18 in block 1 of Forest Hill, as shown on the above mentioned plat, fronting 30 feet on Georgetown and Elm streets, and running West along Elm street 125 feet to lot 19, thence south along 19, 30 feet, thence east parallel with Elm street 125 feet to Georgetown street, thence north along Georgetown street 30 feet to the place of beginning; being the same property conveyed to the parties of the first part by Maggie J. Warren, et al., by deed dated October 20, 1892, recorded in Deed Book 97, page 553.

"And when the purchase price hereinafter named is fully paid, according to the agreement herein set out, the first parties covenant and agree with the second party that they will furnish to the said second party a good and sufficient title to the said real estate with covenant of general warranty, by deed duly executed, acknowledged and delivered by the first parties. The second party, on her part, in consideration of the above named agreement, agrees to pay for the said real estate, to the said first parties the sum of two thousand dollars ($2,-000), with interest thereon at six per cent per annum from this date until paid; but the said purchase money is to be paid as follows, that is to say; the second party has taken out ten certificates in the Southern Mutual Investment Company of Lexington, Kentucky; Now then, the said certificates shall be, and they are hereby, assigned to the said first parties as collateral to secure further the payment of the said purchase price for the said real estate; and the said first parties are hereby authorized to collect all matured coupons on the said certifi-

cates and renewals thereof, until they have received said purchase price and interest in full; except this; that enough of the coupons first matured shall be applied to the payment of any and all liens now existing against the said real estate or any part thereof, and when enough coupons on said certificates or renewals thereof shall have matured and been paid to cover said purchase price, after deducting such part thereof as shall be paid to relieve the said real estate herein described from the encumbrance now existing thereon, said first parties covenant and agree that they will execute, acknowledge and deliver to the second party a good and sufficient deed with covenant of general warranty for the said real estate.

"The second party agrees that she will, each and every month, pay into the said Southern Mutual Investment Company, according to its rules, the dues on said certificates or renewals thereof, that is to say two dollars, ($2) per month on each of said certificates or renewals thereof; and that she will renew said certificates and coupons thereon as fast as they mature; and if at any time the second party should be in default in any of the said payments for as long as three months then all of the said unpaid purchase price above agreed upon with interest thereon up to that date shall be due and payable and the said first parties shall have the right to carry the said certificates in the said Southern Mutual Investment Company and to own the same absolutely.

"The second party agrees to pay all future taxes and insurance on the said property and to keep the said property insured in some reliable fire insurance company, for at least the sum of .................. dollars ($.............) until it is fully paid for, the loss, if any, to be made payable to the parties of the first part as their interest may appear.

> "TALITHA C. FAIN,
> "THOS. A. FAIN,
> "J. B. HEATHMAN,
> "TALITHA HEATHMAN."

August 9, 1897, the appellants, Talitha C. and Thomas A. Fain, purchased of Asa Dodge a house and lot in the same city upon the term and conditions set forth in the following contract:

"This contract made this the 9th day of August, 1897, between Asa Dodge and Talitha C. Fain and

Thomas A. Fain, her husband, all said parties are of Lexington, Fayette County, Kentucky.

"The party of the first part, Asa Dodge, hereby agrees to sell and convey to the said parties of the second part with all improvements thereon, situated and located on South Limestone street in the city of Lexington, Fayette County, Kentucky, being number 367, adjoining in the south, John O'Neill and on the north— Hall for 100 feet, fronting on South Limestone street sixty feet and running northwest parallel lines one hundred and fifty (150) feet; being 60x150 ft., for and in consideration of nineteen hundred dollars ($1,900). And when the purchase price herein named is fully paid according to agreement herein set forth, the first party covenants and agrees that he will furnish to the second party a good and sufficient title to the said real estate, with covenant of general warranty, by deed duly executed, acknowledged and delivered by the first party.

"The parties of the second part on their part, in consideration of the above named agreement, agree to pay to the party of the first part the sum of nineteen hundred dollars ($1,900) with interest thereon at six per cent per annum from this date until paid; but the said purchase price is to be paid as follows, that is:

"The second parties hold a written contract with one Talitha Heathman, wife of Joseph Heathman, of Lexington, Kentucky, for certain real estate in Fayette County, Kentucky, for two thousand dollars ($2,000). For the payment of said two thousand dollars said Talitha Heatman has taken out ten certificates in the Southern Mutual Investment Company. Said certificates are to be kept in force until a sufficient number matures to liquidate said two thousand dollars and said interest. In said contract it is stipulated that certain debts against said real estate shall be liquidated first by maturing coupons, and it is here understood that J. H. Baker is to receive out of the first maturities forty dollars ($40) commission charged to said Talitha Fain and husband (said contract between said Talitha Fain and Thomas A. Fain, her husband, and said Talitha Heathman, and Joseph Heathman, her husband, is hereby assigned and turned over to said Asa Dodge and also said certificates are hereby assigned as collateral to said Asa Dodge to secure the full payment of said nineteen hundred dollars and interest). When said amount and interest is fully paid the remaining coupons shall be

turned over to said Talitha Heathman, provided she has paid the said two thousand dollars 'to said Talitha Fain or Asa Dodge; otherwise said remaining coupons shall be by said Asa Dodge turned over to said Talitha Fain. It is further agreed that said Asa Dodge shall collect for six months from the date hereof the rents on said real estate on said South Limestone street. After said six months shall have expired said rents shall belong to and be paid to said Talitha Fain. All future insurance and future assessed taxes shall be paid by said Talitha Fain. Said property shall be kept insured for at least $600 in some good reliable insurance company, loss, if any, payable to Asa Dodge as his interest may appear.

"Asa Dodge,

"Talitha C. Fain,

"Thomas A. Fain."

It will be observed that in the contract last mentioned not only was the payment of the consideration for the lot therein described secured by a lien on the lot, but also by a pledge and assignment, as collateral, of the certificates of membership in the Southern Mutual Investment Company, taken out by the Heathmans, as required by their contract with the Fains; it being stipulated that whatever money was received by Dodge on the collateral from the Heathmans, should be applied first, to pay J. H. Baker $40; second, to pay certain debts against the real estate purchased by the Heathmans of the Fains; third, the balance, if any, so far as it would answer for that purpose, to be applied in satisfaction of the purchase price of the house and lot sold by Dodge to the Fains.

After the making of the contract between Dodge and the Fains, the former died testate and following the probating of his will, the appellee, Security Trust Company, of Lexington, named therein as executor, duly qualified as such. In the meantime the Southern Mutual Investment Company became insolvent and went into the hands of a receiver. In winding up the affairs of the Investment Company, Dodge's executor was paid by the receiver on the collateral assigned the testator by the appellants $103.33, June 20, 1911, and the further sum of $51 July 15, 1911.

The Heathmans having ceased to continue payments to Dodge under the contract they had with the Fains, and the latter having refused to pay the purchase price due on the lot they purchased from Dodge, the executor of

Dodge sued all of them in the court below for the collection of the purchase money due the testator's estate on the lot he sold the Fains; to that end seeking personal judgment against each of the four and the enforcment, first, of the lien on the lot sold the Fains, second, the lien on the lots sold by the Fains to the Heathmans, which, with the contract creating it, had been assigned the testator by the former.

The answer of the appellants, Talitha C. Fain and Thomas A. Fain, denied any indebtedness to the estate of Asa Dodge and, in substance, alleged that at the time they purchased of Dodge the lot described in the contract made with him, they paid him the entire consideration by assigning him the contract of sale made by them with Talitha Heathman and her husband and the collateral consisting of ten certificates in the Southern Mutual Investment Company, which contract and collateral he accepted in full satisfaction of the price appellants agreed to pay him for the lot, without recourse on them. Moreover, that the lot sold them by Dodge was valued in the trade at $850 and this was the price they paid for it, but that in the contract of sale, $1,900 was stated to be the the consideration, because that was within $100 of the aggregate face value of the collateral assigned to Dodge which they had received from the Heathmans. The answer was made a cross petition against the appellees, Talitha and Joseph Heathman, and judgment prayed against them for such amount, if any, as might be recovered by the executor of Dodge against appellants and that a lien be adjudged them against the lots they sold the Heathmans, therefor. The executor by reply controverted all affirmative matter of the answer. The appellees, Talitha Heathman and Joseph Heathman, in answering the petition of Dodge's executor and the cross-petition of the appellants Talitha C. and Thomas A. Fain, alleged the full payment to them and to Asa Dodge of the purchase price they agreed to pay appellants for the two lots they purchased of them, which they further alleged was $700 and that this sum was its agreed value, but that $2,000 was expressed in the contract of sale as the consideration for the lots, because that was the face value of the certificate in the Southern Mutual Investment Company, through the payment of premiums or coupons on which, it was intended the purchase price of the lots should be paid. The answer further alleged that in this way the appellants and Dodge, to whom these certi-

ficates were assigned, by appellants, were paid in full
the purchase price due on the two lots they purchased of
the latter; and such payment, it was further alleged, en-
titled the appellees, Talitha and Joseph Heathman, to a
deed from appellants conveying them the lots, and such
deed the court was asked to require them to make. The
affirmative matter of this answer was controverted by
the reply of appellants and that of the executor of the
will of Dodge.

The record contains a statement of facts to which it
is admitted all the parties agreed and from this state-
ment it appears that the appellees, Talitha and Joseph
Heathman, after the assignment by appellants of the
contract and collateral to Dodge, paid him for appellants
$154.47, of which amount he applied $109.54 to the extin-
guishment of a lien on the lots sold them by appellants,
as required by the contract between them, and also by
the contract between appellants and Dodge, and this pay-
ment left of the $154.47 received by Dodge, $44.93 which
he applied as a credit on the debt due him from appel-
lants.

The case was submitted in the circuit court upon the
agreed facts and certain issues indicated in writing by
the parties. By the judgment then rendered these issues
were in the main decided as contended by the appellee
Security Trust Company, executor of the will of Asa
Dodge, and the case referred to the Master Commis-
sioner to take proof and report as to payments made ap-
pellants and Asa Dodge by the appellees, Talitha and
Joseph Heathman, the value at the time of their sale of
the lots purchased by the latter of appellants, and of that
purchased by appellants of Dodge and what liens there
were upon the two lots first mentioned.

After taking proof the commissioner made his report
to which exceptions were filed and overruled and the re-
port confirmed. Upon a second submission of the case,
it was finally adjudged by the court that $1,000 instead
of $1,900 was the fair market value of the lot purchased
by appellants of Asa Dodge, and the actual considera-
tion they were to pay for it, and for this amount and its
costs the executor was given a personal judgment
against each of the appellants, with interest from August
9, 1897, credited by $44.92 as of June 20, 1911, and $51
as of July 15, 1911. It was also adjudged that the execu-
tor had a lien upon the lot purchased by appellants from
Asa Dodge to secure the payment of the amount re-

covered, which was ordered to be sold by the commissioner in satisfaction thereof, and that the property being indivisible should be sold as a whole. On the issues as to the appellees, Talitha and Joseph Heathman, the agreement of the parties having fixed the value of the lots purchased by them of appellants at $800, it was adjudged by the court that they were only indebted to the executor of Dodge under the assignment to the latter of their contract with appellants, in the sum of $171.79, with interest from July 15, 1911, and for this amount and interest the executor was given a personal judgment against each of the Heathmans and a lien upon the two lots in question, which, or enough thereof for the purpose, it was further adjudged be sold by the commissioner to satisfy the debt of $171.79 and interest. The judgment also provided that certain tax liens on the several lots to be sold be first paid, and as to these tax liens there seems to have been no controversy.

The appellants, Talitha C. Fain and Thomas A. Fain, being dissatisfied with the judgment on each branch of the case, have appealed. The first question presented by the appeal is, were the certificates of membership of the Heathmans in the Investment Company, which they had taken out to enable them to pay for the lots they purchased of appellants, assigned by the latter to Asa Dodge in absolute payment of the consideration they were to pay him for the lot they purchased of him, or as collateral security therefor. Manifestly, the circuit court correctly decided that it was assigned for the latter purpose. The contract between Dodge and the appellants establishes this fact and as it was not attacked on the ground of fraud or mistake, the parties are concluded by its terms; besides, even if such attack had been made upon the contract, neither of the appellants could testify to the contrary in view of the death of Dodge. The second question is, was it proper for the court to adjudge a sale of the lot Dodge sold appellants for the payment of the purchase money due thereon, before first selling the lots of the Heathmans and their certificates in the Investment Company in satisfaction thereof. This question is not material in view of the fact that the collateral is now admittedly without value, and the further fact that the small amount admittedly owing by the Heathmans on the debt of appellants to Dodge's executor will, in any event, pay such a small part thereof that the sale of appellants' lot will not, after satisfying the

tax liens thereon, even if it brings much more than the value given it by the report of the commissioner, discharge the balance of the debt of the executor. It is immaterial, therefore, whether appellants' lot is sold first or last.

The third question is, did the court err in holding that the true consideration for the sale of the real property in each of the contracts was the amount named as to each by the judgment. Obviously not, as the ruling of the court is sustained by the record. Moreover, appellants are not prejudiced by the holding of the court that the amount they owe the executor of Dodge's will, is less than it would be if their contention as to what the contract was, were sustained. It is not true, as claimed in the brief of appellant's counsel, that the judgment against appelants is in the alternative. It is against both and each of them. Nor is their further contention that a personal judgment cannot be rendered against a married woman tenable. Section 2128, Kentucky Statutes, confers upon a married woman every right to acquire, hold and dispose of property real or personal, and to contract, sue and be sued, possessed by the husband, "except that she may not make any executory contract to sell or convey or mortgage her real estate, unless her husband join in such contract;" nor can she become a surety.

In numerous cases decided since the enactment of this statute we have held that a personal judgment may be recovered against a married woman. Hazen, &c. v. Collossal Cavern Co., 25 R., 502; Coleman v. Coleman, 142 Ky., 39.

Manifestly the judgment against Talitha C. Fain was proper; she jointly purchased with her husband the lot they bought of Dodge and by the terms of the contract became jointly bound with him for the payment of the consideration, for which reason the executor was as much entitled to a personal judgment against her as against her husband.

On the whole record we are satisfied that the judgments correctly determined the rights of all the parties, therefore, they are affirmed.