## Donahue v. Louisville, Henderson & St. Louis Railway Company.

(Decided March 18, 1919.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. **Master and Servant—Assumption of Risk.**—A trackman working for an interstate railroad and engaged in interstate commerce, who is injured by flying slivers of steel which come from a common chisel or clawbar, though defective, with which he is

working, assumes the risk of danger therefrom, and is not entitled to damages, although the suit be prosecuted under the Federal Employers' Liability Act.

2   Master and Servant—Simple Tool Rule.—A spikemaul, T rail, chisel and clawbar are common tools governed by the simple tool rule, as announced by this court.

3.  Master and Servant—Defective Appliances—Assumption of Risk.—One who uses without complaint or an assurance of safety from the master, defective common tools with which he is injured, assumes the risk of danger from such defective common tools, and the company may successfully interpose the plea of assumed risk; such conduct is not contributory negligence on the part of the employe but assumed risk and is only a defense in cases where the Federal Safety Appliance Act does not cover the tool or instrumentality causing the injury.

4.  Master and Servant—Assumption of Risk—Contributory Negligence.—Contributory negligence is not a complete defense to an action for personal injury or death of an employe under the Federal Employers' Liability Act, but can be received only to reduce the recovery. Assumed risk is a complete bar to an action in cases where it can be invoked.

ELMER C. UNDERWOOD for appellant.

HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The Louisville, Henderson & St. L. Ry. Co., operates an interstate railroad, and was at the times complained of and is now engaged in interstate commerce. Appellant Jerry Donahue was employed by said railway company as one of a crew of trackmen engaged in maintaining the tracks in the Louisville yards of said company. On September 21, 1916, appellant Donahue and a colored man named Logsden were directed by the foreman of the gang to take a spike maul and a chisel T rail cutter and go to a certain pile of T rails in the yards of the company and there cut an ordinary steel railroad rail into two parts. This work was accomplished by placing the chisel on the steel rail at the point where it was marked to be cut, and then by striking the chisel with the maul. The colored man held the chisel on the rail while appellant Donahue struck the top of the chisel with the spike maul. The chisel was an old one that had been long in use and the top or head of it had been battered and "mushroomed" by heavy strokes from the spike maul. The spike maul likewise was old and battered. In the course of the work a sliver or

steel splinter flew from the head of the chisel and struck appellee Donahue in the left eye, inflicting a more or less painful injury and impairing the sight of the eye in part. From this injury Donahue lost only a few days' work.

About a month later Donahue with his gang was engaged in repairing a switch in one of the yards. The foreman directed Donahue to take the clawbar, a steel bar about four or five feet long with a claw on one end so arranged as to pull spikes from cross-ties, and place the claw thereof over the head of a steel spike which had been driven into the bolt hole of the rail and splice, in order to drift the rail into position, and hold the bar in such position as to allow a fellow workman to strike the heel thereof with the spike maul and thus drive the spike from the hole in the steel rail. While appellant Donahue was thus holding the clawbar and the fellow workman was striking the heel as aforesaid, a sliver of steel flew from the heel of the clawbar and struck appellant in the right eye, destroying the sight thereof. On the 18th day of January, 1917, Donahue instituted this action in the Jefferson circuit court under the Federal Employers' Liability Act, in two paragraphs, seeking to recover of appellee railway company damages for each of said injuries.

After a general demurrer to the petition had been overruled and other preliminary motions passed upon, defendant filed an answer traversing the allegations of the petition and in the second paragraph averred that plaintiff Donahue was guilty of such contributory negligence as would bar his right of recovery. By the third paragraph the answer alleged that plaintiff Donahue "in entering and remaining in the service of the defendant assumed certain risks and dangers incident to his work and by his contract of service with the defendant he assumed all the ordinary risks and dangers incident to his employment, among which was the risk of injury set up in the petition." The affirmative allegations of the answer were controverted by reply.

The case came on for trial before a jury and at the conclusion of plaintiff's evidence, counsel for defendant company moved the court to peremptorily instruct the jury to find and return a verdict for it, which motion was sustained by the court, and plaintiff's action dismissed, and of this he complains upon this appeal.

The railroad company is an interstate common carrier and was engaged in interstate commerce at the time of the two injuries of which Donahue complains, and Donahue is admitted to have been in its employ at each of said times, and it may be conceded was engaged in interstate commerce. Appellee company insists that the clawbar, chisel and spikemaul employed by appellant Donahue and his fellow workman at the time of which he complains of injury, are common tools governed by what is generally known as the "simple tool" rule, and that the master did not owe to Donahue the duty of inspecting the tools for defects, but that such duty rested upon Donahue as the workman having the tools in charge. To this contention appellant Donahue responded by conceding the tools employed to come within the rule stated, but asserts the most that could be said against appellant is that he was guilty of contributory negligence in continuing to use the tools which he knew to be in a defective condition, and that by the Federal act under which this suit is prosecuted, contributory negligence is not a bar but may be pleaded in mitigation of damages only, and the trial court erred to appellant's prejudice in sustaining the motion for peremptory instruction. Appellee company does not accede to this insistence and attempts to avoid it by saying that the act of appellant Donahue in continuing to use the tools after he knew of their defective condition is not properly classified as contributory negligence, but was an assumption of risk on his part, the tools not being within the Federal Appliance Act, is conclusive of his right to recover.

Appellant Donahue admits that he was thoroughly acquainted with the tools with which he was working at the time of the two accidents. He had been engaged as a track man for about 15 years, 9 years of which had been spent in the yards of the appellee company where the injuries occurred. During that nine years he had used many different chisels similar to the one employed at the time of the first accident. The clawbar with which he was working at the time of the second accident, he testifies, had been on the job and he had been using it for nine years. He admits that he knew of its battered condition; that he had seen it hammered in the same manner with the spike maul before the occasion in question, and that the heel of the claw was battered and bruised so as to be quite visible.

A photograph of the clawbar and the heel thereof is made a part of the evidence. Donahue also admits that there were some twelve or thirteen chisels in the tool box at the time he and his co-laborer selected the maul and chisel with which to do the cutting on September 21, and that all of said chisels were about alike; the top or head of each was spread and battered by long use. The defective condition of the tools was open and obvious; the defects were as apparent to Donahue as to any one and the nature of the tools was so simple and uninvolved as to be understood by any one with ordinary vision and mentality. Donahue had a better opportunity to see and know the condition of the tools with which he worked than did the foreman or master.

Under facts similar to those in this case, this court has repeatedly held that the simple tool rule which exempts the master from liability where the instrument or tool which is the cause of the injury is of so simple a nature and character that a person accustomed to its use can not fail to appreciate the risks of danger incident thereto, is applicable.

In the case of Ohio Valley Railway Company v. Copley, 159 Ky. 38, it was held that where one was injured through a defect in a chisel similar to the one in question in the case at bar, the master was not liable to the injured servant because the tool in question was of a "simple nature, easily understood and in which defects can be readily observed by such servant."

The simple tool rule was first recognized by this court in the case of Sterling Coal & Coke Co. v. Fork, 141 Ky. 41, where a laborer who was working with a common shovel, sustained injuries from a defect in the handle, was denied recovery.

A case very similar to the one at bar is Hoskins v. L. & N. R. R. Co., reported in 167 Ky. 665, where it was held that a clawbar and spike maul, similar to the ones in question in the case under consideration, were simple or common tools which any one of ordinary intelligence may safely use without instruction or assistance, and the duty of inspection as to such tools rests upon the laborer using them and not upon the master. To the same effect are the following Kentucky cases: C. N. O. & T. P. Ry. Co. v. Guinn, 163 Ky. 158; Ohio Valley Ry. Co. v. Copley, supra.

The simple tool doctrine has been acknowledged and applied in most, if not all, of the states of the Union. Some of the more recent cases are the following: Arnold v. Doniphon Lmr. Co., 130 Ark. 486. Wrought Iron Range Co. v. Zeitz (Col.) 170 Pac., 181; Nosal v. International Harvester Co., 187 Ill. App., 411; Morrison v. Peoples Gas, Light and Coke Co., 191 Ill. App. 335; Wiggins v. Standard Oil Co., 141 La. 532; Cooney v. Portland Terminal Co., 112 Me. 329; Cornar v. Minneapolis, St. Paul & S. R. R. Co. (Minn.), 166 N. W., 1072; Southern Ry. Co. v. Hensley, 138 Tenn. 408; Southern Ry. Co. v. Buford, 120 Va. 157; Panhandle, &c. Ry. Co. v. Fitts (Tex.), 188 S. W. 528; Haire v. Schaff (Mo. App.), 190 S. W. 56; Ft. Smith, &c. v. Holcombe (Okla.), 158 Pac. 633.

In the case of Southern Railway Company v. Buford, *supra,* the facts are almost identical with those surrounding the first injury of which Donahue complains, except stronger for him in that the injured workman was not using the hammer or chisel in cutting the rail but was holding the rail when the sliver of steel from the chisel struck and injured him. He was denied a recovery.

There is a distinction recognized by all the courts between assumed risk and contributory negligence, but this distinction fades when pursued to the point where the danger to the servant becomes open and obvious, for there he may in some cases be said to be guilty of contributory negligence if he proceeds with the work, or in other instances to have assumed the risks of danger. The distinction, however, is important in cases tried under the Federal Employers' Liability Act, as is admirably set forth in the case of C. & O. Ry. Co. v. De-Atley, 159 Ky. 687, which was appealed to the Supreme Court of the United States, and while reversed, the principle is recognized and discussed. See C. & O. v. De-Atley, 211 U. S. 309; L. & N. R. R. Co. v. Patrick *supra;* Rase v Minneapolis, &c., Ry. Co. (Minn.), 21 L. R. A. (N. S.) 138; Wiley v. C. N. O. & T. P. Ry. Co., 161 Ky. 305; Lexington Railway Co. v. Cropper, 142 Ky. 39.

Appellant asserts that the employment by Donahue of the defective chisel, spike maul and clawbar amounts to contributory negligence only on his part, and not to an assumption of risk, but this is not borne out by the authorities. In the case of L. & N. Ry. Co. v. Patrick, *supra,* it was expressly held that in an action to recover

for injury received while working as a section hand by slivers or sprawls flying from the spike maul used by another section hand and furnished by the company, the injured servant was not entitled to damages if he knew of the defective condition of the spike maul and the danger of flying slivers therefrom, and continued to work in close proximity to the defective instrumentality without obtaining from the defendant or its foreman an assurance that the defect would be remedied or the danger removed, for the reason that his continuance at such work was an assumption of the risk thereby entailed. That was a case under the Federal Employers' Liability Act, and it was held that the negligence of the company in supplying a defective spike maul did not amount to a violation of the Federal statute enacted for the safety of the employe, commonly called the "Safety Appliance Act." In cases like this where the defective instrumentality does not come within the Federal Safety Appliance Act for the safety of employes, assumed risk may be interposed as a defense, but not so where the instrumentality complained of comes within the provisions of that act. In other words the defense of assumed risk was abrogated by the Federal act of 1908, where the injury resulted in whole or in part through a defective instrumentality employed by the company in violation of the Federal Safety Appliance Act, but where the instrumentality was a simple or common tool, which was not embraced within said act, assumed risk is allowed as a defense. Seaboard Air Line v. Horton, 321 U. S., 492; Southern Ry. Co. v. Gadd, 233 U. S. 572; Glenn v. C. N. O. & T. P. Ry. Co., 157 Ky. 553; Enos Admx. v. Kentucky Distilleries & Warehouse, 163 Ky. 558; Nashville C. & St. L. R. Co. v. Henry, 158 Ky. 88.

To avoid the application of the simple tool rule as above stated, appellant Donahue asserts that the work which he was doing at the time of his second injury was directly under the eye, direction and supervision of the foreman, but he admits that the injury which came to him on September 21, was not so received. He relies upon the opinion in the case of C. N. O. & T. P. Ry. Co. v. Quinn, 163 Ky. 157, where an employe injured by flying slivers of steel was allowed to recover notwithstanding the simple tool rule, because the work was being done by the foreman and the injured servant, the

foreman doing the striking which caused the sliver to fly. There the injured laborer was inexperienced and did not know the dangers from the defective and battered hammer or anvil. In the case at bar Donahue admits that he was thoroughly acquainted with the fact that slivers would fly from a battered chisel, clawbar or spike maul, and with the further fact that the tools with which he worked were obviously defective. In the Quinn case the master was handling the tool from which the sliver flew and injured Quinn, and the opinion in that case is rested upon the principle that a servant will not be barred of recovery where the injury results from a defective simple tool in the hands of another, but only in cases where the injury results from his own use or employment of the simple tool. In this case Donahue was holding and using the defective instrumentality from which the sliver flew and struck his right eye in October, and the exceptions to the rule do not therefore apply.

It follows, therefore, that as Donahue was injured through the employment of defective tools which were not within the prohibition of the Federal Safety Appliance Act, and knew of the defective condition of the tools at the time and before his injury, his continuance to use them was an assumption of the risk of danger incident to the employment of such defective tools, and the railroad company had a right to rely upon his assumption of risk as a defense and the trial court properly sustained its motion for a directed verdict at the conclusion of the evidence of plaintiff, which evidence clearly establishes the facts which bring appellant within the rule above announced.

Judgment affirmed.