**MINERS MEMORIAL HOSPITAL ASSOCIATION OF KENTUCKY, Appellant,**

v.

**Bettie MILLER, Appellee.**

Court of Appeals of Kentucky.

Dec. 16, 1960.

Lay & Knuckles, Pineville, for appellant.

Hiram Brock, Jr., Harlan, for appellee.

PALMORE, Judge.

Appellee, Bettie Miller, fell and broke her wrist while attempting to climb into her bed at appellant's hospital, where she was a patient. This appeal is taken from a $2,500 judgment awarded her against the hospital on the theory that the accident and injury were the proximate result of the hospital's negligent failure to provide reasonable post-operative care.

Mrs. Miller had been hospitalized for treatment of a kidney disorder. On the day of the accident she underwent a cystoscopy, which is described as a diagnostic procedure or examination involving the use of instruments and requiring anesthetization. Following pre-operative sedatives, the anesthetics used were sodium pentothal and nitrate oxide (gas). The patient was in the operating room from 9:50 until 10:30 in the morning and was then removed to a recovery room, where she remained for 30 minutes. It was not shown that she received any further sedation after 10:30 A.M. During her stay in the recovery room under the care of a registered nurse she was checked by her physician and was then sufficiently conscious to answer questions, tell her name and indicate she knew

she was in the hospital. At 11:00 A.M. she was returned to her bed in a ward with three other patients. She did not have a special nurse, but her husband was present and remained with her until about 2:15 P.M. During the interval between 11:00 A.M. and 2:15 P.M. she made two trips, with the assistance of her husband, to the bathroom. At some time after 2:15 P.M. and before 2:45 P.M. she went to the bathroom unassisted. At that time another patient in the room said to her, "If you want to go to the bathroom again, you should call the nurse," but Mrs. Miller replied, "I can make it." On her return she attempted to climb into bed by stepping on a small traveling bag or "train case" and in so doing slipped or lost her balance and fell on the floor, thereby sustaining a wrist fracture.

There was a pushbutton arrangement on the bed whereby Mrs. Miller could have summoned a nurse. She does not remember any of the details of the occasion except for a vague recollection of falling as she tried to get into bed. The theory of her case is that she was still so far under the influence of the sedatives and anesthetics theretofore administered that she did not realize what she was doing and therefore should have been under closer supervision by the hospital personnel.

The plaintiff's evidence consisted of the testimony of Mrs. Miller, her husband, the other patient heretofore mentioned, and a physician who examined Mrs. Miller some three months after the accident. Evidence produced in behalf of the hospital tended to establish that Mrs. Miller should have recovered fully from the effects of the anesthesia within an hour, and that she showed the usual signs of normal recovery upon dismissal from the recovery room. There was no proof that it was customary to furnish special care upon return of a patient from the surgical recovery room, nor was there any evidence of special or unusual conditions which might have indicated such care to be necessary or advisable in Mrs. Miller's case. Her husband testified that

she acted "like a drunk person," but if he considered her in such condition as to require special attention when he left at 2:15 P.M. he did not communicate that fact to any of the hospital personnel. The assistant director of nursing service in the hospital testified that at the time of the accident there were eleven persons on duty on the floor where Mrs. Miller's ward was located and that according to what was usual and customary "the floor was adequately staffed."

Appellant moved for a directed verdict at the close of plaintiff's case and at the conclusion of all testimony. Both motions were overruled. Motion for judgment notwithstanding the verdict, duly made following the verdict and judgment, also was overruled. Grounds for the appeal are that the evidence was insufficient to sustain a verdict and that the instructions were prejudicially erroneous. It will be unnecessary, however, to consider the latter ground.

■ A patient admitted to a hospital operated for private gain is entitled to such reasonable care and attention for his safety as his mental and physical condition, known or discoverable by the exercise of ordinary care, may require. Lexington Hospital v. White, Ky.1952, 245 S.W.2d 927, 929; Hicks' Adm'x v. Harlan Hospital, 1929, 231 Ky. 60, 21 S.W.2d 125; Hignite's Adm'x v. Louisville Neuropathic Sanitorium, 1928, 223 Ky. 497, 4 S.W.2d 407. But "that duty does not require the performance of every act which the most cautious and skillful would employ." Kirby's Adm'r v. Berea College, 1922, 196 Ky. 353, 244 S.W. 775, 778.

In Hicks' Adm'x v. Harlan Hospital, supra, the patient was having difficulty with his respiratory organs following surgery, and the surgeon instructed the head nurse to keep the patient's mouth closed. A succeeding nurse, to whom the instruction was relayed, negligently allowed him to strangle to death while she sat on the bed talking to other persons in the room. A verdict for

the decedent patient's administratrix was affirmed., The situation was much different from this case, of course, because there the doctor had given instructions to the hospital, through its head nurse, and the instructions were violated.

Lexington Hospital v. White, supra; Hignite's Adm'x v. Louisville Neuropathic Sanitorium, supra; Brawner v. Bussell, 1935, 50 Ga.App. 840, 179 S.E. 228, and Emory University v. Shadburn, 1933, 47 Ga.App. 643, 171 S.E. 192, cited by appellee, all involved psychiatric or temporarily deranged patients. In Hayhurst v. Boyd Hospital, 1927, 43 Idaho 661, 254 P. 528, an attending nurse left a recuperating typhoid patient in a chair by an open window for two hours, and the exposure resulted in pneumonia with further complications. In South Highlands Infirmary v. Galloway, 1936, 233 Ala. 276, 171 So. 250, 252, 80 minutes after the return of a 78-year old patient from prostatic surgery the special nurse assigned to watch over him left the room to make entries on a chart. During her absence the patient fell from the bed and broke his thigh. It was held that negligence might include the nurse's "lack of diligence in ascertaining the things she should know * * * so far as these facts would aid a competent nurse to anticipate the reaction or after effects to probably follow his coming out from under the narcotic and immediate shock of the operation. Hyperaesthesia is given as the medical term designating the excitement resulting from restored sensation of the anesthetized parts, etc." However, we do not regard any of those cases as comparable with the situation in which a patient apparently in full possession of her mental faculties is injured through voluntarily undertaking to do by herself what she could easily have called a nurse to help her do.

■ In the instant case we are of the opinion that there was no evidence of any circumstances from which it could reasonably be said that the hospital was under a duty to have a special nurse in the room

with Mrs. Miller more than three hours after she had regained consciousness. Though she may not now remember the events just preceding her injury, it is uncontroverted that she had made two previous trips to the bathroom and was responsive to conversation. Under the circumstances it is scarcely possible to resist the conclusion that the patient was well able to summon a nurse had she chosen to do so. The mere fact that the accident happened is no indication of negligence on the part of the hospital.

A contention that Mrs. Miller was subject to fainting spells or "blackouts" is not relevant, because the accident did not result from a blackout.

We conclude that appellant was entitled to a directed verdict and, having been denied it, to a judgment n. o. v.

The cause is reversed with directions that a judgment be entered dismissing the complaint.